# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

```
_____
                               )
In re                          )
                               ) Chapter 7, No. 17-41215-FJB
BRADLEY DAVIDSON               )
                               )
              Debtor           )
                               )
_____)
                               )
MATTHEW WHITE                  )
                               ) Adv. Proceeding No. 17-
      Plaintiff                )
                               )
      v.                       )
                               )
BRADLEY DAVIDSON               )
                               )
      Defendant                )
_____)
```

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT**

This is an adversary proceeding brought under 11 U.S.C. §101, *et. seq.* (the "Bankruptcy Code"), including §§523, 105 and other applicable sections of the Bankruptcy Code, Bankruptcy Rules 7001, *et seq.*, the Massachusetts Local Bankruptcy Rules, and other applicable statutes, federal law, regulations and rules, state law and case law to determine the dischargeability of a debt.

**PARTIES, JURISDICTION AND VENUE**

1.   On June 30, 2017, the Bradley Davidson (the "Debtor", "Defendant", or "Debtor/Defendant") filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code, commencing the above captioned Chapter 7 case.  The Debtor resides at 27 Billerica Road, Chelmsford, MA  01824.

2.   Matthew White resides a 305 E. 8th Street, New York, NY 10028.  He is listed as in the Debtor's Chapter 7 schedules as a

disputed, unliquidated, contingent creditor in the amount of $1,000,000.00.  Matthew White is the plaintiff in this adversary proceeding (the "Plaintiff").

3.   This Court, the United States Bankruptcy Court for the District of Massachusetts, has jurisdiction pursuant to 28 U.S.C. §§1334, 151 and 157, and the Order of Reference set forth in Rule 201 of the Local Rules of the United States District Court for the District of Massachusetts.  Further, this Court, pursuant to 11 U.S.C. §105(a), has equitable power to issue an order which is necessary and appropriate to carry out the provisions of 11 U.S.C. §§101, *et seq.*  This adversary proceeding relates to the Chapter 7 bankruptcy case of Bradley Davidson, Case No. 17-41215, filed in the Central Division of the District of Massachusetts (Bankruptcy Rule 7008(a)).

4.   This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b).

5.   Venue is proper in this district pursuant to 28 U.S.C. Section 1409.

## ALLEGATIONS OF FACT

6.   Matthew White (again, the "Plaintiff") is a successful singer and songwriter of songs such as "Best Days" and "Love", and his songs have been featured in movies such as *What Happens in Vegas* and *Shrek the Third* and hit television shows such as *The Bachelor*, *The Oprah Winfrey Show*, and *One Tree Hill*.

7.   Beginning in or about late 2013, Matthew White was approached by Brad Davidson, the Defendant, concerning a potential deal by which he, with Daniel Pearson, and the company of which they were the sole principals, Think Say, would promote and market Matthew White's music and persona.

8. In an effort to convince the Plaintiff to engage the Defendant and Think Say, the Defendant pushed that he and Think Say worked with famous artists and celebrities such as David Duchovny, Wyclef Jean, John Mayer, and Beyoncé. (December 18, 2013 Email from B. Davidson to M. White). According to Davidson, $500,000 was required to market White and his music, including the preparation of a radio tour and a marketing event specifically for White's hit song "Love". This was an unusual requirement, because a company responsible for an artist's marketing and promotion typically will be responsible for the financial outlay relating to such work.

9. Nonetheless, to address any concerns over the peculiarities of the proposed arrangement, the Debtor/Defendant advised Matthew White on December 18, 2013 as to how carefully the $500,000 would be utilized:

> In a world of no guarantee's [sic], here's mine. I guarantee any dollar given to support us will be maximized and utilized better than anyone. Failure is not an option and it won't be with you and your music. I tell Dan all the time, when I want something to happen it doesn't always happen the moment I want it, but it's going to happen.

December 18, 2013 Email from the Debtor/Defendant to the Plaintiff. Similarly, in a February 20, 2014 Email from the Defendant to the Plaintiff, the Defendant stated "[i]f we have 500k to work with, we should do a singles deal that doesn't force recoupment, and offers a fair split of sales, and publishing percentage share . . . So essentially all the money would be used towards breaking the single, you wouldn't have to wait for recoup.")

10. The proposed $500,000 budget was based off of a similar budget that the Debtor/Defendant had purportedly utilized for another artist named Andy Grammer. (March 16, 20 Email from the Defendant to the Plaintiff: "The budget below is based on the

Andy Grammer Kepp [sic] your head up single. … To [break your single] the plan requires 500k.")

11. In general, if not specifically, the Defendant, in these discussions, represented re-releasing the song "Love" in order to increase its digital sales, streams and public exposure, thereby resulting in increased earnings and value of the song's value, particularly its publishing and copyright value.

12. The Defendant, in these discussions, also represented that he, and his company Think Say Records, were a highly successful "independent" record label. The Defendant also specifically represented that he had significant experience as a record label executive and would provide valuable experience.

13. During the discussions detailed above, Matthew White approached Burch Creative Capital, a venture capital organization, about providing funds to himself in order to engage the Defendant. At all times relevant, Burch Creative Capital was Matthew Bradford's agent (although also Matthew White's creditor when they advanced funds to Matthew White as stated below).

14. Beginning in or about March of 2014, the Defendant begin to express frustration that White had not wired any funds. (March 14, 2014 Email from the Defendant to the Plaintiff). In a further effort to solicit payment and start promotion of Matthew White and the song "Love", the Defendant provided a detailed plan, including photographs, music videos, travel, radio shows, social media, publicity, and related activities. In or around April of 2014, in response to that pressure and representations, Burch transferred approximately $250,000 to Think Say on White's behalf.

15. Despite the detailed plan(s) and representations, the Defendant refused to present a written contract, demanding payment first. The Defendant stated that he did not want to pay attorneys to draft or review and agreement until he was holding

the funds, further stating "the deal is coming next week, and we have already started. We are **good people and we can't wait to win.**" (emphasis added).

16. The Defendant did not provide the Plaintiff with a written agreement until May 2014. This agreement was materially different from the promises and representations they had made to White to induce him to secure the $500,000. Among other things, whereas Think Say and the Defendant had promised to promote the Defendant's song "Love", including setting up a radio tour, before White remitted payment, the draft agreement did not obligate to do any work to promote White's music and persona. Whereas the Defendant had promised to return any funds left over from the $500,000 budget, the draft agreement allowed Think Say to keep the unused remainder. And whereas the Defendant had promised "a fair split of sales" including payments back to Burch Creative Capital, the draft agreement provided that the Defendant and Think Say would be entitled to all the money that "Love" generated.

17. Despite the differences between the draft agreement and promises made to White, Davidson and Pearson pressed ahead, asserting that Think Say had begun to promote White's songs and that they needed the remaining $250,000 promptly or their promotional and marketing work would be severely harmed. In seeking the remaining $250,000, Davidson gave the "hard sell" directly to Burch Creative Capital, promising that:

> With the commitment of the remaining 250k my company's top priority will be to get Matt's single to the market, we will give daily updates of progress direct to Kevin and/or yourself so you will see how your money is working, and I am happy to structure the deal so you are getting more return *vis a vis* Think Say and diversify this investment through Matt and ourselves. That will guarantee more chances to win for you across the board.

June 20, 2014 Email from the Defendant to Burch Creative Capital.

18. In further pressuring for additional funds, as for how the Defendant and Think Say would utilize the Plaintiff's funds, the Defendant again offered assurance as to the care with which he would apportion Plaintiff's advancement and the value they would provide, stating that:

> When we were brought on to take a project that was going nowhere, we made him [Andy Grammer] a plan to win and executed. We spend 0 on what isn't needed and only budget what gets results. We are also masters of stretching travel.
>
> The first single alone sold close to 2 million globally, and more importantly has brought in close to 3 million in revenue from license and publishing. The first single also paved the way for two more hit singles and a platform for touring, merchandising and revenue stream for the artist. That is what we will do for Matt.

June 21, 2014 Email from B. Davidson to Burch Creative Capital.

19. Concerned about the need for oversight, the Defendant requested that the funds be placed in escrow so that he could monitor the use of the funds. Email of July 14, 2014 from the Plaintiff to K. Maas (upon information and belief, K. Mass is an employee/agent of Think Say and/or the Defendant): "Still feel strongly about putting it in escrow."). The Defendant refused, stating he would not move forward with his and other parties' work if the funds had to be placed in escrow. (July 14, 2014 Email from K. Maas to the Plaintiff). As conciliation, the Defendant agreed to provide accountings from time to time to show how the funds were utilized.

20. Having been induced to believe that a delay in payment would cause a misstep in the Plaintiff's career, based upon the representations of the Defendant, another $150,000 was transferred to Think Say in or about July of 2014.

21. All told, the Plaintiff paid or caused to pay at least $400,000.00 prior to the execution of a written agreement.

22. As part of a written agreement presented to the Plaintiff in October, 2014, a detailed budget was provided, with $170,000.00 allocated for salaries, and $330,000.00 allocated for costs and expenses associated with the re-release and promotion of the song "Love".

23. At or about the time of the execution of the written agreement in or about October, 2014, the Plaintiff, through Burch Creative Capital, caused an additional $100,000 to be paid to the Defendant and his company, Think Say.

24. All told, the Plaintiff paid, or caused to be paid on his behalf, to the Defendant and his company, Think Say, at least $500,000.00.

25. Despite the assurances of the Defendant that funds provided would be used solely for the benefit of the Plaintiff, in detailed specific manners, the Defendant, and his company, failed to do so as follows:

- The Defendant promptly disbursed all funds received from or on behalf of the Plaintiff to the Defendant, to the personal bank accounts of the Defendant and Daniel Pearson, a principal of the Defendant's company.

- The Defendant failed to effect a new production of the Plaintiff's song, "Love" despite representations that this would be effected.

- The Defendant failed to engage a competent producer to "re-cut" the song "Love", despite assurances that one would. The Plaintiff had recommended Eric Robertson, an experienced sand successful producer; instead the Defendant caused the employment to one Colin Lee, but failed completely, requiring the Plaintiff to engage Eric Robertson.

- Once the Plaintiff had a reproduction of the song "Love", the Defendant failed to negotiate a new record deal for the song despite the Defendant's assurances since March, 2014, that he would do this.

- After pressing the Defendant, a record deal was proposed by the Defendant, but with the Plaintiff receiving royalties of only 10%, significantly below market rates.

- In August, 2014, the Plaintiff demanded and received a meeting with the Defendant. Daniel Pearson, and associate and/or principal of the Defendant's company, assured the Plaintiff that "all of the money is there" with the exception of "small reasonable expenses". Despite demands for a specific accounting, no accounting was provided. The Defendant was aware of all representations made, and made no effort to correct these comments. Despite the representations detailed in this subparagraph, most, if not all, funds provided had been disbursed for purposes other than for the Plaintiff's benefit (and solely for the benefit of the Defendant and Daniel Pearson).

- After the August meeting, detailed immediately above, Burch Creative Capital requested and received a meeting (again, as the Plaintiff's agent), and requested an accounting. No accounting was received; instead, the Defendant provided a verbal revised timeline and marketing plan for the future, stating "all we want is a fair deal," also stating that "we are going to take a real shot and launch the song and make it the hit we all know it can be."

- Despite this meeting, the Defendant failed to take any further action on behalf of the Plaintiff.

- Despite the Defendant's various verbal commitments since March, 2014 to promote the Plaintiff with radio and broadcasting venues, the Defendant failed to make any such efforts.

- Despite assurances since March 2014, Defendant did not consummate marketing events traditional in the industry and represented by the Defendant that would take place.

- The Defendant made many representations to the Plaintiff that the song would be entering air lay rotations on a number of stations in different markets across the country; the song "Love" plain on one station only.

- The Defendant and/or his agents, represented several stations with which promotional efforts were made; no such promotions were made at any of these stations, including one which the Defendant represented took place at WXKX of Charlesburg, Virginia, which is an AM frequency sports/talk platform, and another one which the Defendant represented took place at WFLY in Albany, New York at which the Defendant asserted was attended by the Plaintiff, when the Plaintiff never so visited.

- The Defendant made similar false representations with other prospective and future clients, sometimes using the Plaintiff's name as a potential collaborator, even though

the Plaintiff never discussed such collaboration with these parties or the Defendant.

26. To date, Think Say and the Defendant have provided the Plaintiff with two irreconcilable budgets. The first budget, provided and/or dated May 20, 2015, reflected that approximately $295,113.25 out of $500,000 remained unused. When the Plaintiff questioned certain expenses, the Defendant prepared a second budget in June of 2015 that contained different expenditures and reflected that $339,336 remained unused, a differential of over $40,000 from the prior budget.

27. Beginning in or about May of 2015 and on behalf of the Plaintiff, Burch Creative Capital began requesting that the Defendant and Think Say return the unused funds. May 29, 2015 Email from Burch Creative Capital to the Defendant and Daniel Pearson. When the Plaintiff pushed further, he learned from K. Maas (again, of Think Say/Defendant) that the Defendant and Daniel Pearson had transferred large amounts of the Plaintiff's funds into their personal bank accounts because they had trouble paying their bills. (June 9, 2016 Email from K. Maas to the Defendant: "[T]hey took the money and they have not moved as swiftly as possible and fully understand now that they need to make moves in returning at least the unspent money back to Chris. YES, Dan admitted that they put it into their personal accounts and they know it was wrong."); (*see also* Text Messages between K. Maas and the Plaintiff: "Dan was telling me that they don't deny that they used the money for their own accounts and that they know it's wrong but like they had to for various reasons. Like Dan said he has a hard enough time paying the bills. Which is kinda sad.)".

## Count I
## Determination of Non-Dischargeability Under
## 11 U.S.C.§ 523(a)(2)

28. The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29. The Defendant made various misrepresentations as detailed above.

30. The Defendant's misrepresentations were material.

31. The Defendant intended to make such misrepresentations.

32. The Defendant/Debtor, intended that the Plaintiff rely upon such misrepresentations.

33. The Plaintiff justifiable relied upon the Defendant's misrepresentations.

34. The Plaintiff was damaged by at least $1,000,000.00 by the misrepresentations, by making false representations, verbally and in writing, that the Plaintiff justifiable relied upon, cause injury to the Plaintiff in the amount of $24,967.99.

35. 11 U.S.C.§ 523(a)(2) excepts from the debtor's discharge a debt for false pretenses, a false representation, or ac actual fraud, and use of a statement in writing that materially false concerning the debtor's financial condition which the Plaintiff relied and the debtor cause to be made with intent to deceive.  The Debtor/Defendant's actions qualify under these provisions.

36. The Plaintiff's claim for $1,000,000.00 is non-dischargeable under 11 U.S.C.§ 523(a)(2)(a) and (b).

### Count II
### Determination of Non-Dischargeability Under
### 11 U.S.C.§ 523(a)(4)

37. The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38. At all times relevant, the Debtor/Defendant acted in a fiduciary duty by accepting payments for child support for the Plaintiff's son.

39. 11 U.S.C.§ 523(a)(4) excepts from the debtor's discharge a debt for fraud or defalcation while acting in a fiduciary capacity.

40. The material misrepresentations of the Debtor/Defendant constitute fraud or defalcation.

41. The Plaintiff's claim for $500,000.00 is non-dischargeable under 11 U.S.C.§ 523(a)(4).

### Count III
### Determination of Non-Dischargeability Under
### 11 U.S.C.§ 523(a)(6)

42. The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43. The Debtor/Defendant received payments totaling $500,000.00, to which the Debtor/Defendant knew he was not entitled to receive.

44. 11 U.S.C.§ 523(a)(6) excepts from the debtor's discharge willful and malicious injuries.

45. The action of the Debtor/Defendant constitute willful and malicious injuries.

46. The Plaintiff's claim for $500,000.00 is non-dischargeable under 11 U.S.C.§ 523(a)(6).

**WHEREFORE**, the Plaintiff requests that the Court enter judgment against the Debtor/Defendant in favor of the Plaintiff as follows:

1. On account of Count I, that the Court determine that the Plaintiff's claim of $1,000,000.00 is non-dischargeable under 11 U.S.C.§ 523(a)(2), and award the Plaintiff interests and costs, including reasonable attorneys' fees;

2. On account of Count II, that the Court determine that the Plaintiff's claim of $500,000.00 is non-dischargeable under 11 U.S.C.§ 523(a)(4), and award the Plaintiff interests and costs, including reasonable attorneys' fees;

3. On account of Count III, that the Court determine that the Plaintiff's claim of $500,000.00 is non-dischargeable under 11 U.S.C.§ 523(a)(6), and award the Plaintiff interests and costs, including reasonable attorneys' fees; and

4. That the Court grant such other and further relief as it finds just and proper.

                                         Matthew White

Dated: September 22, 2017

                                         */s/ Louis S. Robin*
                                      Louis S. Robin (BBO545578)
                                      Law Offices of Louis S. Robin
                                      1200 Converse Street
                                      Longmeadow, MA  01106
                                      Tel No. (413) 567-3131
                                      Fax No. (413) 565-3131